UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

MYRON A. MANIER,                    )
                                    )  No. CV-06-0150-MWL
            Plaintiff,              )
                                    )  ORDER GRANTING DEFENDANT'S
      vs.                           )  MOTION FOR SUMMARY JUDGMENT
                                    )
JO ANNE B. BARNHART,                )
Commissioner of Social              )
Security,                           )
                                    )
            Defendant.              )
                                    )

      BEFORE THE COURT are cross-motions for summary judgment,

noted for hearing without oral argument on December 11, 2006. (Ct.

Rec. 12, 16).  Plaintiff Myron A. Manier ("Plaintiff") filed a

reply brief on December 1, 2006.  (Ct. Rec. 19).  Attorney Maureen

Rosette represents Plaintiff; Special Assistant United States

Attorney Joanne E. Dantonio represents the Commissioner of Social

Security ("Commissioner").  The parties have consented to proceed

before a magistrate judge.  (Ct. Rec. 7).  After reviewing the

administrative record and the briefs filed by the parties, the

Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 16)

and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 12).

- 1 -

**JURISDICTION**

On September 27, 2002, Plaintiff filed an application for Supplemental Security Income ("SSI") benefits, alleging disability since June 15, 1985, due to "bipolar, attention/deficit etc." (Administrative Record ("AR") 112-115, 124).[1]  Plaintiff's application for SSI was denied initially and on reconsideration.

Administrative hearings were held before Administrative Law Judge ("ALJ") Richard Hines on August 19, 2004, November 29, 2004, July 18, 2005, and September 15, 2005, at which time testimony was taken from Plaintiff, medical expert Thomas McKnight, Ph.D., medical expert Ronald M. Klein, Ph.D., and vocational expert Tom L. Moreland.  (AR 589-630).  On December 18, 2005, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 21-27).  The Appeals Council denied a request for review on April 25, 2006.  (AR 10-13).  Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on May 22, 2006.  (Ct. Rec. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here.  Plaintiff was 40 years old on the date of the ALJ's decision, had received a

///

---

[1]Plaintiff previously filed an application for SSI on September 9, 2001, which was denied initially and dismissed by an ALJ on July 10, 2002. (AR 21).  The ALJ in this case indicated that the period prior to July 2002 had thus been adjudicated and would not be addressed in his decision. (AR 21).

high school equivalency diploma (GED), and had no vocationally relevant past work experience.  (AR 22).

At the administrative hearing held on August 19, 2004, Thomas McKnight, Ph.D., testified.  (AR 591-596).  Plaintiff was incarcerated at the time and was therefore not present.  (AR 591). Dr. McKnight indicated that Plaintiff does not seem to have a borderline personality disorder or an anti-social personality disorder and found that there was no documentation that Plaintiff has a bipolar disorder.  (AR 593-594).  It was noted that the diagnosis of a bipolar disorder was self-reported.  (AR 594).  Dr. McKnight also indicated that the record reflects that Plaintiff did not have a mathematic disorder.  (AR 594).

Dr. McKnight stated that most of the information in Dr. Wert's report was self-reported.  (AR 594).  He also noted that Dr. Wert's two MMPIs were invalid, indicating over-reporting.  (AR 596).  Dr. McKnight opined that Plaintiff does not have any condition that meets or equals a Listings impairment.  (AR 595). He stated that Plaintiff appears to be a career criminal with a history of substance abuse.  (AR 595).  Dr. McKnight testified that if Plaintiff used substances, it would be problematic from an employment perspective.  (AR 595).

Plaintiff testified by telephone at the administrative hearing held on July 18, 2005, because he continued to be incarcerated.  (AR 604-618).  Plaintiff agreed that he has done very little work in his lifetime and indicated that he has supported himself by doing crimes and selling drugs.  (AR 606-608).  Plaintiff indicated that he had not used drugs since 2002, when his child was taken away from him.  (AR 611).

- 3 -

Plaintiff stated that "I'm not saying that I can't do . . . any . . . work whatsoever." (AR 608). He indicated that his temperament gets him into trouble, and he "just can't hold a job." (AR 608). Plaintiff testified that his disability is "more emotional than anything" (AR 610) and his main issues for disability purposes are his psychological problems (AR 617).

At the administrative hearing held on September 15, 2005, medical expert Ronald M. Klein, Ph.D., testified. (AR 621-628). Plaintiff continued to be incarcerated at the time and was therefore not present at this hearing. (AR 621). Dr. Klein indicated that Plaintiff's symptoms did not meet or equal a Listings impairment. (AR 623). He opined that there was no impairment of activities of daily living, a mild impairment of social functioning, and a mild impairment, at most, of concentration, persistence and pace. (AR 623).

Dr. Klein noted that Plaintiff has very little vocational history to examine because he has been incarcerated a significant portion of his adult life for a variety of offenses. (AR 624). However, Dr. Klein stated that the record reveals that Plaintiff's behavior has been voluntary and not impulse driven or beyond his control. (AR 624).

Dr. Klein noted that the psychological aspect of using aliases during Plaintiff's various criminal actions would suggest a level of intent or planning indicative of a voluntary process. (AR 624-625). Plaintiff's academic history reveals someone who made a voluntary shift from performing as expected as opposed to someone with early learning disabilities. (AR 625). Another factor considered by Dr. Klein is Plaintiff's repeated offenses of

varying types demonstrative of voluntary behavior, rather than a pattern of criminal behavior which would evidence impulse. (AR 625-626). Dr. Klein also directed the ALJ's attention to Plaintiff's scores on the Rey 15-item test and the invalid MMPI profiles of record which indicate that Plaintiff attempted to appear more impaired than he really is on these tests. (AR 626-627). Finally, Dr. Klein noted that the records from Plaintiff's psychiatrist at the Monroe Correctional Facility reveal that Plaintiff was able to control his behavior, comply with what was expected, and be amiable and pleasant in interaction in the structured setting of that facility, indicative of one who has voluntary control over his actions. (AR 627-628).

Vocational expert, Tom L. Moreland, also gave brief testimony at the administrative hearing held on September 15, 2005. (AR 628-630).

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work he has performed in the past. If Plaintiff is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of his residual functional capacity and

his age, education and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d

573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097;  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### DRUG ADDITION AND/OR ALCOHOLISM

The Social Security Act bars payment of benefits when drug addiction and/or alcoholism ("DAA") is a contributing factor

material to a disability claim.  42 U.S.C. §§ 423(d)(2)(C),
1382(a)(3)(J); *Sousa v. Callahan,* 143 F.3d 1240, 1245 (9th Cir.
1998).  "Material" means that the individual would not be found
disabled if he stopped using drugs and/or alcohol.  Plaintiff has
the burden of showing that his DAA is not a contributing material
factor to disability.  *Ball v. Massanari*, 254 F.3d 817, 823 (9th
Cir. 2001).  If there is evidence of DAA and the individual
succeeds in proving he is disabled, the Commissioner must
determine whether the DAA is material to the determination of
disability.  20 C.F.R. §§ 404.1535, 416.935.  If an ALJ finds that
the claimant is not disabled, then the claimant is not entitled to
benefits and there is no need to proceed with the analysis to
determine whether alcoholism is a contributing factor material to
disability.  However, if the ALJ finds that the claimant is
disabled and there is medical evidence of drug addiction or
alcoholism, then the ALJ must proceed to determine if the claimant
would be disabled if he stopped using alcohol or drugs.
*Bustamante v. Massanari*, 262 F.3d 949 (9th Cir. 2001).

Throughout the record there is recurring references to
Plaintiff's substance abuse and continued incarceration throughout
his adult life.

## ALJ'S FINDINGS

The ALJ found at step one that Plaintiff has not engaged in
substantial gainful activity since his alleged onset date.  (AR
22).  At step two, the ALJ determined that Plaintiff has
polysubstance abuse, a severe impairment, and, when his
polysubstance abuse is considered, he meets the criteria of a
Listings impairment.  (AR 24).  However, the ALJ determined that

Plaintiff's polysubstance abuse was material to the determination of disability. (AR 24). Absent consideration of drug addiction and/or alcoholism, the ALJ concluded that Plaintiff has no severe, medically determinable impairments. (AR 24). The ALJ specifically found that all of Plaintiff's symptoms of mental illness can be attributed to substance abuse. (AR 26). Accordingly, the ALJ determined, at step two of the sequential evaluation process, that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 26-27).

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law. Specifically, he argues that:

1.    The ALJ erred by finding that Plaintiff does not have a severe mental impairment;

2.    The ALJ erroneously relied on the testimony of the medical experts over the opinions of other doctors of record; and

3.    The ALJ failed to set forth the requisite specific and legitimate reasons, supported by substantial record evidence, for rejecting the opinions of certain medical professionals.

This court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

Plaintiff contends that the ALJ erred by concluding that he did not have a severe mental impairment. (Ct. Rec. 13, pp. 8-14). Plaintiff specifically asserts that the ALJ erred by relying on the testimony of the medical experts and by erroneously rejecting

the opinions of other medical professionals of record.  (Ct. Rec.
13, pp. 8-14).  The Commissioner responds that the ALJ properly
evaluated the medical evidence and properly determined that
Plaintiff did not have a severe mental impairment, absent
substance abuse.  (Ct. Rec. 17, pp. 14-28).  The undersigned
agrees.

The regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c),
provide that an impairment is severe if it significantly limits
one's ability to perform basic work activities.  An impairment is
considered non-severe if it "does not significantly limit your
physical or mental ability to do basic work activities."  20
C.F.R. §§ 404.1521, 416.921.  Plaintiff has the burden of proving
that he has a severe impairment.  42 U.S.C. § 423(d)(1)(A); 20
C.F.R. § 416.912.  In order to meet this burden, Plaintiff must
furnish medical and other evidence that shows that he is disabled.
20 C.F.R. § 416.912(a).  In the absence of objective evidence to
verify the existence of an impairment, the ALJ must reject the
alleged impairment at step two of the sequential evaluation
process.  SSR 96-4p.

The ALJ evaluated the evidence of record, considered the
hearing testimony of Plaintiff and the medical experts, and
concluded that Plaintiff suffers from no severe medically
determinable mental impairments, absent consideration of his
substance abuse.  (AR 26).  The ALJ specifically noted that all of
Plaintiff's symptoms of mental illness can be attributed to
substance abuse.  (AR 26).

///

///

Plaintiff contends that the ALJ erred by giving greater weight to the opinions of Drs. McKnight and Klein than to the opinions of Drs. Wert, Kester, and Brown. (Ct. Rec. 13, pp. 8-14). The Commissioner responds that the ALJ properly relied on the testimony of the medical experts to find that Plaintiff did not have a severe impairment absent DAA. (Ct. Rec. 17, pp. 14-28).

In a disability proceeding, the courts distinguish among the opinions of three types of physicians: treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 839 (9th Cir. 1996). The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830. Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a nonexamining medical advisor. *Magallanes v. Bowen,* 881 F.2d 7474, 751-755 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion. *Magallanes*, 881 F.2d at 751-52; *Andrews,* 53 F.3d 1042-43. Moreover, an ALJ may reject the testimony of an examining, but nontreating physician, in favor of a nonexamining, nontreating *///*

physician only when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

Dr. McKnight testified at the administrative hearing held on August 19, 2004. (AR 591-596). Dr. McKnight found that Plaintiff does not seem to have a borderline personality disorder or an anti-social personality disorder and found that there was no documentation that Plaintiff has a bipolar disorder. (AR 593-594). Dr. McKnight noted that the diagnosis of a bipolar disorder was self-reported and that the record reflects that Plaintiff did not have a mathematic disorder. (AR 594). Dr. McKnight stated that Plaintiff is a career criminal with a history of substance abuse and opined that Plaintiff does not have any condition that meets or equals a Listings impairment. (AR 595).

With regard to examining physician Wert, Dr. McKnight stated that most of the information in his report was self-reported. (AR 594). He also noted that Dr. Wert's two MMPIs were invalid, indicating over-reporting. (AR 596).

Dr. Klein testified at the administrative hearing held on September 15, 2005. (AR 621-628). Dr. Klein also opined that Plaintiff's symptoms did not meet or equal a Listings impairment. (AR 623). He found that there was no impairment of activities of daily living, a mild impairment of social functioning, and a mild impairment, at most, of concentration, persistence and pace. (AR 623). Dr. Klein noted that Plaintiff has very little vocational history to examine because he has been incarcerated a significant portion of his adult life for a variety of offenses. (AR 624).
///

Dr. Klein stated that the record reveals that Plaintiff's behavior has been voluntary and not impulse driven or beyond his control.  (AR 624).  Dr. Klein noted that the psychological aspect of using aliases during Plaintiff's various criminal actions would suggest a level of intent or planning indicative of a voluntary process.  (AR 624-625).  Plaintiff's academic history reveals someone who made a voluntary shift from performing as expected as opposed to someone with early learning disabilities.  (AR 625).  Another factor considered by Dr. Klein is Plaintiff's repeated offenses of varying types demonstrative of voluntary behavior, rather than a pattern of criminal behavior which would evidence impulse.  (AR 625-626).  Dr. Klein also directed the ALJ's attention to Plaintiff's scores on the Rey 15-item test and the invalid MMPI profiles of record which indicate that Plaintiff attempted to appear more impaired than he really is on these tests.  (AR 626-627).  Finally, Dr. Klein noted that the records from Plaintiff's psychiatrist at the Monroe Correctional Facility reveal that Plaintiff was able to control his behavior, comply with what was expected, and be amiable and pleasant in interaction in the structured setting of that facility, indicative of one who has voluntary control over his actions.  (AR 627-628).

The ALJ agreed with and adopted the assessments of Drs. Klein and McKnight, finding their assessments consistent with and supported by the medical evidence of record.  (AR 25).  The opinions of these medical experts support the ALJ's determination that, with considering the effects of DAA, Plaintiff does not have a severe impairment.

///

In making his disability determination in this case, the ALJ specifically rejected the evaluations of Drs. Kester, Brown and Wert. (AR 26). The ALJ noted that those medical professional opinions were determined based on evaluations conducted in conjunction with Plaintiff's receipt of public assistance benefits or custody of his child, they were based primarily on Plaintiff's non-credible statements,[2] they do not reflect consideration of conflicts in Plaintiff's reports and they do not reflect consideration of Plaintiff's ongoing use of alcohol and drugs. (AR 26).

Plaintiff was examined on December 6, 2002, and January 10, 2003, by Paul M. Wert, Ph.D. (AR 514-518). Dr. Wert saw Plaintiff for a psychological assessment on referral from the Division of Children and Family Services. (AR 514). Thus, as noted by the ALJ (AR 26), Dr. Wert evaluated Plaintiff for child custody purposes.[3]

Dr. Wert noted that Plaintiff reported he was diagnosed with a bipolar disorder at age 21 or 22, and reported diagnoses of bipolar disorder and ADD and a history of depressive and manic

---

[2]Plaintiff only makes a cursory argument regarding the ALJ's credibility finding in this case. (Ct. Rec. 13, p. 12). As noted in the ALJ's determination, responses during testing resulted in invalid profiles on numerous occasions, raising the possibility that Plaintiff was not putting forth maximum effort or was not fully cooperating, Plaintiff's record shows a pattern of drug abuse and addiction despite his denial that the use of drugs and alcohol was a problem, Plaintiff has been involved in frequent criminal behavior indicating dishonesty and deception are part of his lifestyle, and malingering was diagnosed by Dr. Debra Brown in April of 2002. (AR 23, 25). Based on the foregoing, the undersigned finds that the record fully supports a finding that Plaintiff is not credible, and the ALJ did not err by so finding.

[3]When a physician is involved in an application process, thus becoming an advocate for the claimant, an ALJ is entitled to consider this factor in evaluating his testimony. *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996).

episodes.  (AR 516-517).  Based on Plaintiff's self-report, Dr. Wert diagnosed a bipolar disorder, mixed type.  (AR 517).  Dr. Wert does not discuss evidence, other than Plaintiff's self-report and description of symptoms, for his assessment of a bipolar disorder.  The ALJ properly gave this assessment little weight as it was based on Plaintiff's non-credible self-report.[4]

Dr. Wert additionally diagnosed Plaintiff with cocaine abuse/dependency, by history, currently in brief remission by Plaintiff's self-report, cannabis abuse/dependency, by history, currently in brief remission by Plaintiff's self-report, and a personality disorder, not otherwise specified, with antisocial, histrionic, paranoid and schizoid features and gave Plaintiff a global assessment of functioning ("GAF") score of 40-50.[5]  (AR 517-518).  However, Dr. Wert does not specifically assess Plaintiff's functioning ability absent the diagnosed substance abuse disorders.

Dr. Wert administered the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2") on two occasions, and the results of each test were invalid.  (AR 517).  Dr. Wert noted that Plaintiff endorsed an unusual number of problems and symptoms and "may have done so in an attempt to obtain secondary gain."  (AR 517).  Despite these invalid test scores, Dr. Wert went on to give the above assessment.

---

[4]As indicated above, the ALJ's credibility finding is supported by the evidence of record and free of error.  *See, Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (a physician's opinion may be disregarded when it is premised on the properly rejected subjective complaints of Plaintiff).

[5]A GAF of 50-41 reflects: "[s]erious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV 32 (4th ed. 1994).

A state agency reviewing physician, Eugene Kester, M.D., filled out a Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment form on February 25, 2003.  (AR 519-538).  On the form, Dr. Kester noted that Plaintiff suffered from a bipolar disorder, mixed type, a personality disorder, NOS, with antisocial, histrionic, paranoid and schizoid features, and cocaine and cannabis dependency, both in brief remission per claimant.  (AR 522, 526, 527).  Dr. Kester marked that Plaintiff had mild limitations of activities of daily living, marked difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace and one or two repeated episodes of decompensation, each of extended duration.  (AR 529-530).  Dr. Kester also determined that Plaintiff was markedly impaired in his ability to interact appropriately with the general public.  (AR 536).  The Ninth Circuit has held that a check-box form is entitled to little weight.  *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's rejection of a check-off report that did not contain an explanation of the bases for the conclusions made was permissible).

As with Dr. Wert, this non-examining physician failed to separate out Plaintiff's functioning with and without substance use.  Nevertheless, Dr. Kester remarked that Plaintiff "is able to maintain a routine and complete a normal workday/workweek" and that, "even allowing for possible bipolar disorder, and with his possible reduced mental flexibility as per his concrete responses to proverbs, he is capable of performing simple work."  (AR 532, 537).  Dr. Kester opined that Plaintiff "has no psychiatric

impairment that would prevent him from completing a normal
workday/workweek." (AR 533).

    With regard to Plaintiff's credibility, Dr. Kester noted that
there were significant credibility issues and Plaintiff's
assertion that he no longer is using drugs should be interpreted
with caution. (AR 532). He noted that two MMPI-2 exams given by
Dr. Wert produced invalid results which could have been due to
random answering, confusion or secondary gain, a Rey test of
malingering given by Dr. Debra Brown in 2002 was indicative of
inadequate effort, and an MMPI-2 exam given by Dr. Brown revealed
that Plaintiff did not provide good effort. (AR 532).

    A state agency reviewing physician, Michael Brown, Ph.D.,
also filled out a Psychiatric Review Technique form on June 3,
2003. (AR 539-553). Dr. Brown's check-box form essentially
mirrors the form of Dr. Kester but provides no detailed
explanation for his conclusions. Dr. Brown noted that Plaintiff
suffered from a bipolar disorder, mixed type, a personality
disorder, NOS, with antisocial, histrionic, paranoid and schizoid
features, and cocaine and cannabis dependency, both in brief
remission per claimant. (AR 542, 546, 547). Dr. Brown marked
that Plaintiff had mild limitations of activities of daily living,
marked difficulties in maintaining social functioning, moderate
difficulties in maintaining concentration, persistence or pace and
one or two repeated episodes of decompensation, each of extended
duration. (AR 549-550). Again, this check-box form, completed by
a non-examining physician, failed to separate out Plaintiff's
substance abuse when making a determination regarding his
functioning.

As supporting evidence for his argument that he has a severe mental impairment, Plaintiff also cites reports from two medical professionals which were completed prior to July 2002. (Ct. Rec. 13, pp. 9-10). As noted above, Plaintiff previously filed an application for SSI on September 9, 2001, which was denied initially and dismissed by an ALJ on July 10, 2002. (AR 21). The ALJ in this case indicated that the period prior to July 2002 had thus been adjudicated and would not be addressed in his decision. (AR 21). Accordingly, it was not err for the ALJ to fail to consider the pre-2002 medical reports of Collen LeMagie, ARNP, (AR 232-234) and Allen Bostwick, Ph.D., (AR 428-434), which would have been part of the record for the prior, closed claim.

The ALJ properly assigned weight to the opinions of the medical experts to find that Plaintiff did not suffer from a severe medically determinable mental impairment, absent consideration of his substance abuse. Dr. Klein had available for review all of Plaintiff's medical records and gave an assessment of Plaintiff's functioning ability absent consideration of drugs and alcohol.[6] Dr. Klein's evaluation of the record was thus the most comprehensive. The undersigned concurs with the ALJ's rationale for according greater weight to the opinions of the medical experts and finds that the ALJ reasonably relied upon their opinions in making his conclusions in this case. Moreover, as outlined above, the Court finds that the ALJ provided specific and legitimate reasons, supported by substantial evidence, for

---

[6]It is significant to note that Ms. LeMagie and Drs. Bostwick, Wert, Kesler and Brown all evaluated Plaintiff prior to his stay at the Eastern State Hospital in September and October 2004. Dr. Klein is the only medical professional of record to have those records available for his review.

rejecting the findings of Drs. Wert, Kester and Brown.  *See*, *supra*.  The ALJ did not err by rejecting the opinions of these doctors in favor of the opinions of the medical experts in this case.  The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony.  *Magallanes*, 881 F.2d at 751.  If evidence supports more than one rational interpretation, the Court must uphold the decision of the ALJ.  *Allen*, 749 F.2d at 579.  It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.

The weight of the record evidence supports the ALJ's finding that Plaintiff's mental impairments were not severe, absent consideration of his substance abuse.  Plaintiff failed to meet his burden at step two of the sequential evaluation process to establish the existence of a severe mental impairment.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.912.  Accordingly, the ALJ's determination at step two is without error.

### CONCLUSION

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's step two decision that, absent consideration of drug addiction or alcoholism, Plaintiff's impairments are not severe, is supported by substantial evidence and free of legal error.  Plaintiff is thus not disabled within the meaning of the Social Security Act.  Accordingly,

**IT IS ORDERED**:

1.  Plaintiff's Motion for Summary Judgment (**Ct. Rec. 12**) is **DENIED**.

///

       2.   Defendant's Motion for Summary Judgment (**Ct. Rec. 16**) is **GRANTED**.

       3.   The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file.

    **DATED** this   17th   day of January, 2007.


                   s/Michael W. Leavitt
                    MICHAEL W. LEAVITT
          UNITED STATES MAGISTRATE JUDGE